(No. 17837.—Reversed and remanded.)
LLEWELLYN C. LOOKER, Defendant in Error, *vs.* HENRY
BUENTE, Plaintiff in Error.

*Opinion filed April 20, 1927.*

1. DRAINAGE—*liability of the petitioners for engineering fees where plan is abandoned before organization of district.* Where the plan of a proposed drainage district under the Levee act is abandoned before the district is organized the petitioners for the organization of the district are liable for the necessary expenses of any engineering work necessary to the presentation of the petition, but they are not liable for detailed work showing a complete system of drainage, as the statute does not require that a complete system should be surveyed before the district is organized and commissioners appointed.

2. SAME—*what is required to be stated in petition for district.* The petition for the organization of a drainage district under the Levee act 'is not required to state anything more than the general nature of the work proposed to be done, including the proposed starting points, routes and termini of the work and a general description of the lands proposed to be affected, so that land owners may form some judgment as to the necessity, propriety and cost of the work.

3. SAME—*when attorney for a proposed district does not bind petitioner by employment of engineer.* The attorney for the petitioners for a proposed drainage district does not bind a petitioner by his employment of an engineer, who was one of his own clients, without the express or implied consent of the petitioner, and the facts that the petitioner knew of such employment, had talks with the engineer and with the attorney who employed him, and knew the engineer took much time in doing the work, do not make the petitioner liable for all the engineering work done, much of which was more than was necessary to properly present the petition.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kankakee county; the Hon. ARTHUR W. DE-SELM, Judge, presiding.

FRANK J. BURNS, and JAMES T. BURNS, for plaintiff in error.

LUTHER B. BRATTON, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This case comes to this court upon a petition for *certiorari* to review a judgment of the Appellate Court affirming a judgment of the circuit court of Kankakee county in favor of Llewellyn C. Looker, (herein called plaintiff,) against Henry Buente (herein called defendant).

Plaintiff in the action was a civil engineer and sued to recover for services rendered in a proceeding to organize a drainage district which was never organized but was finally abandoned. The first count alleges plaintiff was a civil engineer, which was known to defendant, who was the owner of 280 acres of land in the proposed district and desired to have it drained; that he signed a petition to form a drainage district to obtain the drainage, requested plaintiff to do all the necessary work to effect that object, promised to pay the customary fee, and that plaintiff between December 1, 1919, and April 18, 1921, performed services necessary to enable defendant to present his petition, and defendant promised to pay $4000. There were also added the common counts. Plaintiff's claim filed with his declaration totaled $2177.50, and he filed an affidavit that that amount was due. Defendant filed a plea of the general issue and an affidavit of defense, alleging he did not employ plaintiff as alleged; that he did sign a sheet at the request of and presented to him by Thomas Martin for the organization of a drainage district; that the petition did not authorize the employment of plaintiff or any other person; that defendant did not know plaintiff at the time and had no communication with him; that the district was never organized and the petition was invalid, and defendant is not indebted to plaintiff. The trial was by jury and a verdict returned in favor of plaintiff for $1100. The court overruled a motion for a new trial and rendered judgment on the verdict. Defendant appealed to the Appellate Court,

and that court affirmed the judgment. This court allowed the petition of defendant for writ of *certiorari.*

The material facts, as we understand them, are, that the petition to organize the drainage district was circulated in the latter part of 1919. It was not filed until October 14, 1920. There were sixty-five land owners in the proposed district, according to the petition. Originally thirty-four names were signed to the petition, but nine of them, including defendant, withdrew before the petition was filed, and some other signers filed affidavits in court contesting their signatures. Defendant, after filing his notice and affidavit of withdrawal, asked to have his name restored to the petition, but that was not acted upon. The petition, or only the sheet of it which contained the prayer for the organization of the district, was circulated by Thomas Martin. He testified he took around to the land owners to be signed only the sheet containing the prayer for organization, and the other sheets were added to the petition after that sheet was signed. He testified that defendant signed it; that he (Martin) consulted with the attorney here representing plaintiff, and the attorney assisted in getting signers to the petition and was to look after the legal end; that he and the attorney spoke about a surveyor; that he (Martin) did not know plaintiff, but that his name was mentioned and he was satisfied that the attorney hire him on the strength of the signatures. We understand Martin later withdrew from the petition, as the abstract refers to an order of February 25, 1921, showing a hearing on the petition of Martin and defendant to withdraw. We are unable to find in the abstract or record what order, if any, was made on Martin's petition to withdraw, but the petition, according to the briefs of both parties, was dismissed before any order was made declaring the district organized and before any commissioners were appointed. Neither Martin nor defendant, nor any of the petitioners, requested plaintiff to perform services for the organization of the district. That

request was made by the attorney who Martin said was to look after the legal end of the proposed organization. Martin consulted the attorney and a petition was prepared of considerable length. Martin testified that he presented to persons requested to sign it only one sheet containing the prayer for the organization of the district under the Levee act and the appointment of commissioners for the execution of the proposed work in accordance with the statute. Thirty-four persons, at the request of Martin or the attorney, signed the petition. The sheets of the petition to be attached to the prayer recited the employment of the attorney for plaintiff and his authority to amend the petition in any manner he deemed necessary for the legal organization of the district. Plaintiff began work in December, 1919. The petition was filed, as before stated, October 14, 1920, and the last work plaintiff did was in April, 1921. Defendant knew plaintiff was doing work in the district. He talked to plaintiff about it, also to the attorney, and never made any objection to his doing the work.

Defendant contends that under section 3 of chapter 76, (Smith's Stat. 1923, p. 1230,) which reads, "Except as otherwise provided in this act, all joint obligations and covenants shall be taken and held to be joint and several obligations and covenants," the petitioners are severally liable to pay for plaintiff's services, and the court so instructed the jury. The court also instructed the jury that the attorney who files the petition in a court of record becomes the attorney and legal agent for the petitioners, and they are in law bound by his acts and ratify such of his acts as are reasonably necessary for the presentation of the petition. The court refused instructions offered by defendant that no recovery could be had for services rendered not reasonably necessary to sustain the petition in court. The court also refused an instruction that signing a petition raised no implication in law that the signers, or any of them, are liable to plaintiff.

The questions presented for our determination are, (1) whether any liability for debts or expenses incurred attaches to the signers of the petition for the organization of a drainage district when the petition is dismissed or abandoned before the district is organized; (2) whether, if there is any liability in such case, the liability of the signers is joint and several; (3) what is the measure of the recovery if defendant is severally liable in this case for the charges made by the engineer.

No decision of this court has been referred to holding that a petitioner for the organization of a drainage district which is never organized thereby becomes liable for all expenses incurred. The nearest approach to deciding the liability of a petitioner for the organization of a drainage district are decisions involving the liability in cases where the district has been declared organized but upon petition of the land owners has been abandoned before any contract was let. *Deneen* v. *Deneen,* 293 Ill. 454, held in such case the petitioners for the abandonment are liable for the court costs, only, and that such expenses as attorney's fees and engineer's fees cannot be taxed as costs. In that case the district was organized and the expenses incurred before the amendment of the statute in 1919. The statute as amended expressly provided that at any time before a contract for the construction of the work was made, a majority of the land owners owning more than one-half of the land in the district might present a petition to abandon the district, and if the court entered an order granting the prayer of the petition it should be upon condition that the petitioners pay all court costs within thirty days. *Schewe* v. *Glenn,* 302 Ill. 462, and *Bossert* v. *Granary Creek Drainage District,* 307 id. 425, were decided after the amendment to the statute was adopted, and each of them held that the petitioners for abandonment, where the order of abandonment was entered by the court, could not be held liable for attorney's fees and engineer's fees; that the only thing that peti-

tioners could be held liable for was the court costs. In those cases the engineer's and attorney's fees were incurred. by the commissioners after the district was declared organized. In this case the fees for the services of the engineer were incurred under his employment by his own attorney, and the organization of the district was abandoned before the district was declared organized or commissioners had been appointed. It is clear under our previous decisions referred to, that if the district had been declared organized and the engineer had been employed by the commissioners he could not have recovered for his services against the petitioners for abandonment of the district when the district was ordered abandoned. We are of opinion that there is no liability of a petitioner for a drainage district for the services of an engineer where the organization is abandoned by the petitioners, unless it be that some work by the engineer is necessary to the presentation of the petition. We do not undertake to say whether any work of an engineer was necessary in this case, but we are decidedly of opinion plaintiff did more work than was reasonably necessary for the presentation of a petition for the organization of a district. The Levee Drainage act (Smith's Stat. 1923, sec. 2,) provides that the petition shall set forth the proposed name of the district, the necessity for drainage, "with a description of the proposed starting points, routes and termini of the work and a general description of the lands proposed to be affected, with the names of the owners, when known." It is possible some engineering work might be required to be done preparatory to preparing and presenting a petition, but it is clear that where there is any necessity for any engineering work for that purpose it would be slight, and it was never contemplated that a complete survey should be made and system planned for the drainage prior to the appointment of commissioners. Plaintiff began his work six months before the petition was filed and continued it several months after it

was filed. The last charge in his account filed was for work done April 19, 1921. The account includes services of chainmen, use of plaintiff's automobile at five dollars a day, meals, locating main and tile and tile drains, running levels and cross-sections, locating branches, extending field notes, posting notices, and other items too numerous to specifically mention. Plaintiff testified that when the petition was filed most of the work was done; that his attorney gave him his instructions relative to the work a day or two prior to December 18, 1919. Defendant did not request him to do the work. Plaintiff consulted with the attorney representing him in this case, who was attorney for the petitioners. He testified he had collected "sufficient data for a plat ready for the commissioners,—a complete plan so that the commissioners would have nothing further to do but levy an assessment;" that all of the field work had been done but a lot of office work remained. No such amount of work prior to organization was contemplated by the statute. It would have been a very small matter to have gone over the territory and described its character and the routes and termini of the ditches without making an elaborate survey. Horse creek, a natural water-course, was to be the outlet. The starting point was 2.8 miles from the head of the creek up-stream for a main tile. The laterals, as we understand, follow swales. It was never intended by the statute that a complete system should be surveyed before the district was organized and commissioners appointed. The commissioners are not required to adopt such plan if it is made. The statute makes it their duty to examine the lands and have surveys, profiles, plats, plans and specifications made, including specified details. Section 12 of the Levee act provides that the commissioners shall not be bound by the preliminary work of the petitioners nor confined to the route or termini of the drains or ditches, or their number, extent or size, or their manner of construction proposed by the petitioners. The preliminary work

contemplated by the statute before the district is organized requires neither much time nor great skill in performing. In *Wayne City Drainage District* v. *Boggs,* 262 Ill. 338, this court said: "The statute does not contemplate, however, that the petition shall contain such information as would constitute specifications on which bids for the doing of the proposed work might be made. It is not necessary that the petitioners, under the provisions of the Levee act, should go to the expense of employing an engineer to estimate the exact size of the ditches proposed or to give the exact location of such ditches by courses and distances. It is only necessary that the petition should specify the starting point and terminus of each ditch, together with its general route, so as to afford reasonably accurate information to the parties interested of the extent and general course of each ditch." The petition is not required to state anything more than the general nature of the work proposed to be done, so that land owners may form some judgment as to the necessity, propriety and cost of the work. "It [the statute] does not contemplate that every matter of detail shall be minutely set forth in the petition, and the statute is satisfied if the property owners can readily understand from the petition the general character of the proposed work." *People* v. *Wells,* 291 Ill. 584.

We are disposed to hold that the petitioners for the organization of a drainage district are liable for the necessary expenses of any engineering work necessary to the presentation of the petition, but they are not liable for detailed work such as plaintiff did in this case, necessary to a complete system of drainage preparatory to the presentation of the petition. It is true, plaintiff recovered only about half of his claim, but to our minds that is greatly in excess of what was necessary to be done by him preparatory to the presentation of the petition.

We are of opinion the attorney for plaintiff, who was also attorney for petitioners, had no right to bind defend-

ant by the employment of plaintiff without his consent, express or implied, and the proof does not show any such consent. Defendant knew plaintiff was engaged a considerable period of time in doing the work, during which time he had talks with plaintiff and with the attorney who employed him and did not repudiate the services. That was not sufficient to make him liable for all the work.

The court erred in holding that defendant was liable for the amount of the work done by plaintiff even if his liability was several, and the judgment must be reversed and the cause remanded.

*Reversed and remanded.*